AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| RODNEY ALLEN | ) | Case No. |
| | ) | 3:19-mj- 1347-JRK |
| | ) | |
| | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __August 29, 2019__ in the county of __Duval__ in the __Middle__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 844(e) | Threat by phone |
| 18 U.S.C. § 248(a)(1) | Interference with access to reproductive health services |

This criminal complaint is based on these facts:

See attached affidavit.

☒ Continued on the attached sheet.

*Complainant's signature*

FBI Special Agent Robert W. Blythe
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 9-24-2019

*Judge's signature*

City and state: Jacksonville, Florida

U.S. Magistrate Judge James R. Klindt
*Printed name and title*

## AFFIDAVIT

I, Robert W. Blythe, being duly sworn, state as follows:

## INTRODUCTION

1. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI), and I am currently assigned to the Jacksonville Field Office and work public corruption and civil rights investigations. I was previously assigned to the New Orleans FBI office until June 2018 and worked on one of two public corruption squads from August 2010 through June 2018. I have been employed by the FBI since June 2008 and have worked on numerous investigations of civil rights and violent crimes. I have employed a variety of investigative techniques in my career, including applying vehicle tracking devices, executing various types of search warrants, debriefing defendants, and working with confidential human sources to predicate and further investigations by, for example, having them wear recording devices to record conversations or telephone calls with subjects, specifically in the context of investigations of civil rights and violent crimes. I have attended advanced training in criminal investigations, including training regarding the investigation of civil rights and violent crimes. In the performance of my duties, I have investigated and assisted in the investigation of matters involving violent crimes and civil rights violations.

2. As a federal agent, I am authorized to investigate and assist in the prosecution of violations of United States laws and to execute search warrants and arrest warrants issued by federal and state courts. I have investigated and assisted in

JRK

the investigation of criminal matters involving violent crimes and civil rights violations. In connection with such investigations, I have served as case agent, been the affiant for search warrants, and conducted interviews of defendants and witnesses.

3. The statements contained in this affidavit are based on my personal knowledge, as well as on information provided to me by experienced Special Agents and other law enforcement officers and personnel. This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that RODNEY ALLEN has committed violations of Title 18, United States Code, Sections 844(e), which makes it unlawful for any person to use a telephone or other instrument of interstate or foreign commerce to convey certain actual or false threats, and 248(a)(1), which makes it unlawful to interfere with access to reproductive health services.

4. I make this affidavit in support of a criminal complaint against RODNEY ALLEN, that is, on or about August 29, 2019, in the Middle District of Florida, RODNEY ALLEN did knowingly and willfully, by means and use of an instrument of interstate commerce, that is, by cellular telephone, make a threat, and maliciously convey false information knowing the same to be false, concerning an alleged attempt being made, and to be made, to unlawfully damage and destroy a

building, specifically, a reproductive health clinic ("RHC") in Jacksonville, Florida, by means of fire and an explosive in violation of Title 18, United States Code, Section 844(e).

5. I also make this affidavit in support of a criminal complaint against RODNEY ALLEN, that is, on or about August 29, 2019, in the Middle District of Florida, RODNEY ALLEN, did knowingly and willfully, by threat of force, intentionally intimidate and interfere with, and attempted to intimidate and interfere with, a woman with the initials A.S. and the employees of the RHC, a facility located in Jacksonville, Florida, in the Middle District of Florida, that provides reproductive health services, because the RHC provided reproductive health services, and in order to intimidate A.S. from obtaining, and the employees of the RHC from providing, reproductive health services in violation of Title 18, United States Code, Section 248(a)(1).

6. On August 30, 2019, I, along with United States Deputy Marshals Joseph Grogan and Emily Hillard, interviewed personnel—C.V.M., V.B., and K.F.—from the RHC regarding a bomb threat called into the clinic on August 29, 2019. C.V.M. told me that a patient, A.S., reported she was in a bad relationship with ALLEN and previously scheduled an abortion in North Carolina, Florida, and Georgia, but ALLEN cancelled previous appointments at other clinics owned by the RHC, including at clinics in Charlotte, North Carolina, and Raleigh, North Carolina. A.S.

3

told C.V.M. that ALLEN tracked her and seemed to have access to her call and text message information.

7. C.V.M. told me that ALLEN even found out A.S.'s patient code, which is a unique number assigned to each patient, like a pin number, so the RHC call center can verify they are speaking with an authorized party. C.V.M. told me that a person believed to be ALLEN used A.S.'s patient code on August 29, 2019, to purport to be an authorized party. C.V.M. said that a person believed to be ALLEN called the RHC several times on August 29, 2019, and he also called the RHC's owner, K.F., on her cell phone. A person believed to be ALLEN called the RHC at 7:50 a.m., 7:51 a.m., and 7:52 a.m. These were missed calls. A person believed to be ALLEN also called the RHC a second time at 7:52 a.m., which was answered by the RHC. At that time, a person believed to be ALLEN stated that a patient at the clinic, A.S., had a weapon on her.

8. C.V.M. told me that a person believed to be ALLEN also called at approximately 9:24 a.m. on August 29, 2019, and spoke with T.H. T.H. filled out a Bomb Threat Report Form detailing the call. C.V.M. gave me a copy of the form. According to the form, the person believed to be ALLEN stated: "Someone is coming to the clinic to blow it up and hes (sic) just letting us know ahead of time." T.H. wrote that the caller was an adult male. Next to the question asking when the bomb was going to explode, T.H. noted "today."

4

9. C.V.M. told me that another call came in from a person believed to be ALLEN at 10:26 a.m. on August 29, 2019, which prompted S.V. to fill out a Bomb Threat Report Form detailing the call. S.V. noted what the caller, who identified himself as "Jeffrey Land," or "Lag," stated, "A patient here at the facility is on op[i]oids[,] and I am afraid that whatever the doctor is going to give her will interfere with the drugs and kill her." C.V.M. also gave me a copy of this form. The form states that the caller said his name was "Jeffrey Lang," or "Lag," but S.V. recognized the voice of the person believed to be ALLEN from previous calls made to the clinic. C.V.M. also took notes about the calls and gave me a copy of the notes. The notes indicate the person believed to be ALLEN called the clinic numerous times, including several that went unanswered.

10. K.F. told me that, in another call (7:52 a.m. call from paragraph seven) on August 29, 2019, the person believed to be ALLEN said A.S. had a weapon on her. When K.F. asked A.S. if she had a weapon on her, A.S. responded that she only had a small purse with her, voluntarily opened it for inspection, and put her personal belongings in the car upon being asked to do so by K.F.

11. K.F. also told me S.V. answered another call from a person believed to be ALLEN, at approximately 3:07 p.m. on August 29, 2019, during which he asked what to do if the patient did not wake up.

12. K.F. told me that, at approximately 3:50 p.m. on August 29, 2019, she

5

contacted A.S. and left her a voicemail to check on her. A.S. called K.F. back at approximately 4:04 p.m. A.S. told K.F. that she had to move from the Marriott hotel in Jacksonville to the Studio 6 motel in Jacksonville and had to pay in cash because ALLEN hacked into her account and she did not want him to know where she was staying for the night.

13. K.F. told me that, at approximately 7:13 p.m. on August 29, 2019, a person believed to be ALLEN called K.F. on her cell phone. K.F. assumed the person believed to be ALLEN got her number from A.S.'s phone records, because her cell phone number is not public, but K.F. had previously used it to contact A.S. K.F.'s cell phone is in the name of the clinic. The incoming phone number showed up as "Kingstree, SC" on K.F.'s caller ID. K.F. knew A.S. was from South Carolina and that someone believed to be ALLEN, also from South Carolina, called the RHC numerous times that day. During the call, the person believed to be ALLEN said his name was "Julius Landry" and that "Karen Schumer," or "Schomer," gave him K.F.'s phone number. He said he was calling about his 17-year-old daughter who needed help. He also asked K.F. about her affiliation with the clinic. K.F. confronted the person believed to be ALLEN and told him that she knew the caller was ALLEN, not a man named Julius Landry. ALLEN acknowledged calling the clinic earlier that day. K.F. also knew the caller was ALLEN based on the caller ID saying, "Kingstree, SC." ALLEN told K.F. that he was in the outskirts of Jacksonville.

14. As a result of the calls by the person believed to be ALLEN, V.B., the RHC's office manager, said she was afraid for A.S.'s life. K.F. also said she was afraid something consistent with ALLEN's threats would actually happen, and that he would do something desperate. Further, as a result of ALLEN's calls, the RHC's staff spent time investigating the threats and allegations levied by ALLEN, diverting time and resources from other patients and clinic operations to address issues raised by ALLEN's calls. This included completing internal forms, tracking and annotating ALLEN's calls, temporarily suspending operations, and enlisting the help of local law enforcement. The Jacksonville Sheriff's Office (JSO) and RHC's security officer (a JSO officer) searched the property for a bomb to safeguard staff and patients against potential violence. In addition, on August 30, 2019, Deputy US Marshals Joseph Grogan and Emily Hillard and I walked around and through the buildings to see if there were any suspicious packages or objects at or near the RHC.

15. On September 10, 2019, I served a subpoena on Verizon for the subscriber information and toll records for 843-540-7263, which was the number used to call RHC. I received the records from my subpoena on September 15, 2019. The subscriber information for 843-540-7263 indicated the phone is registered to ALLEN. I conducted a review of the toll records provided by Verizon, which showed ALLEN called the RHC on August 29, 2019, at 7:38 a.m. (call duration 696 seconds). Toll records indicated ALLEN also called the RHC at 7:50 a.m. (call duration 460

seconds), which corresponds with the call received by RCH staff referenced in paragraph seven. Toll records also indicated ALLEN called the RCH at 8:15 a.m. (call duration 7 seconds) and 9:20 a.m. (call duration 1 second). Toll records indicated ALLEN called the RHC at 9:22 a.m. and the call duration was 197 seconds, which corresponds with the call referenced in paragraph eight. The toll records show ALLEN dialed "*67" to mask the telephone number he was calling from when he called the RHC at 9:22 a.m. Toll records showed that ALLEN called the RHC on August 29, 2019, at 10:25:32 a.m., and the call duration was 344 seconds, which corresponds with the call described in paragraph nine. The records show ALLEN also dialed "*67" when he made this call, which masks the telephone number from which he was calling. My review of toll records revealed that ALLEN called the RHC at 3:07 p.m., and the call duration was 156 seconds, which corresponds with the call described in paragraph 11.

16. On September 11, 2019, FBI Special Agent (SA) Christopher Weismantel, of the Columbia Division, Hilton Head office, told me that he contacted A.S. by phone to try to set up an interview. SA Weismantel called A.S.'s phone several times and left voice messages for her. He also told me he sent her text messages before he was able to make contact with her. He said they agreed to meet on September 11, 2019.

17. On September 11, 2019, SA Weismantel told me that he met with A.S.

in person on the same date. SA Weismantel told me that A.S. said that, in May of 2019, ALLEN came over to her residence and "forced himself" on her, forcing her to have sex with him against her will, which resulted in a pregnancy. About five weeks into the pregnancy, she attempted to schedule an abortion. She does not have a vehicle, so she had to try to schedule the appointment around times when someone could drive her to an appointment. Between the fifth and seventeenth weeks of her pregnancy, she attempted to schedule an abortion procedure on approximately ten or eleven different occasions. Each time, it was cancelled by an unknown individual, whom she suspected was ALLEN. In each instance, A.S. would learn the appointments were cancelled either from calling the clinic to discuss the appointment or by being contacted by the clinic confirming the appointment had been cancelled. Specifically, she attempted to schedule the procedure on five occasions at a clinic located in Augusta, Georgia. She also attempted to schedule it on two occasions at a clinic in North Carolina. In addition, she attempted to schedule the procedure on four to five occasions at the RHC. Finally, she was able to confirm an appointment for August 29, 2019, at the RHC, after advising staff that her ex-boyfriend, ALLEN, was responsible for cancelling the prior appointments without her consent or authorization.

18. SA Weismantel also told me A.S. said ALLEN is known to call her nonstop and has done so often. She said he had been arrested for trespassing after

9

being told to leave her alone and refusing to comply. She also reported that, while they were in a relationship together previously, they are no longer together. Since splitting up, A.S. said ALLEN became physically abusive to her and threatened to kill several members of her family. A.S. confirmed ALLEN's cell phone number is 843-540-7263. A.S. stated ALLEN has also called her from other numbers. A.S. confirmed she did not give SA Weismantel's cell phone number to ALLEN.

19. On September 11, 2019, SA Weismantel told me he was contacted by ALLEN on the same day. ALLEN made the following calls to SA Weismantel's cell phone:

9/11/2019 3:49 p.m. – Incoming call – missed call

9/11/2019 3:54 p.m. – Incoming call – missed call

9/11/2019 3:54 p.m. – Incoming call – answered, 45 seconds

9/11/2019 3:55 p.m. – Incoming call – answered, 6 minutes 45 seconds

SA Weismantel told me that, in each instance, no telephone number appeared on SA Weismantel's cell phone, just the word "Restricted." SA Weismantel told me he later determined it was ALLEN after SA Weismantel asked the caller if he was RODNEY ALLEN and ALLEN confirmed that he was. SA Weismantel asked ALLEN how he got his number, and ALLEN said he got it from one of his kid's mothers. However, he refused to provide the identity of the kid's mother. SA Weismantel told ALLEN he was an FBI agent and asked ALLEN why he was calling him. ALLEN referenced

10

an unknown ATF investigation. SA Weismantel told ALLEN he needed to meet with him, and ALLEN agreed to meet on September 16, 2019.

20. On September 12, 2019, SA Weismantel told me that, on the same day, he directed A.S. to place a consensually monitored telephone call from her cell phone to ALLEN's cell phone. A.S. was unable to reach ALLEN initially so she texted him at SA Weismantel's direction, telling him she needed to talk to him. ALLEN called A.S. back from his cell phone at approximately 1:12 p.m. On September 21, 2019, I reviewed the recording of this call. ALLEN said he received A.S.'s text message and asked what the emergency was. A.S. told ALLEN that the FBI contacted her regarding ALLEN making a bomb threat to a clinic. ALLEN asked A.S. if this was some kind of "practical joke." A.S. asked ALLEN if he knew she was pregnant, and ALLEN said he did not have any confirmation that she was pregnant. ALLEN denied making a bomb threat and asked A.S. why he would have done something crazy like that. A.S. confronted ALLEN about telling their friend that A.S. was trying to kill their (ALLEN and A.S.'s) baby. A.S. confronted ALLEN and asked him how he was able to determine who A.S. was calling, texting, and where she was going. ALLEN denied having information about who A.S. was calling and where she was going. ALLEN told A.S. she must be on drugs.

21. On September 16, 2019, SA Weismantel told me about his voluntary interview with ALLEN on that same day, which he surreptitiously recorded. Deputy

11

*JRK*

United States Marshal Brian Kelly was also present for the interview. On September 21, 2019, I reviewed the recording of the interview provided by SA Weismantel. SA Weismantel read a 18 U.S.C. § 1001 warning to ALLEN at the beginning of the interview. ALLEN refused to sign the form containing the warning read by SA Weismantel. ALLEN told SA Weismantel that he lived at 15 Ben Allen Rd, Beaufort, South Carolina and his phone number is 843-540-7263. During his interview, ALLEN asked if the interviewing agents intended to arrest him. He wondered if the "justification of emotion" would keep law enforcement from arresting him or charging him with a crime. He also asked how much time someone found guilty of this offense would face and the specific law he broke. Deputy U.S. Marshal Kelly told ALLEN that we all make mistakes and some have greater consequences than others. In response, ALLEN said, "I guess this would definitely qualify." When asked if he made the calls to the RHC in Jacksonville, Florida, on August 29, 2019, ALLEN stated, "I never made a bomb threat." However, when ALLEN was told multiple times throughout the interview, by SA Weismantel and Deputy U.S. Marshal Kelly, that he made calls to the RHC, he did not deny that he made them. Instead, he usually remained silent, and, at one point, ALLEN asked if he could call SA Weismantel later. ALLEN also described being involved in two physical altercations with A.S. ALLEN stated he would be lying if he said he did not get information on A.S. that she did not give him from A.S.'s phone. I interpreted this to mean ALLEN surreptitiously

12

obtained information about A.S. from her phone without her knowledge.

22.     On September 19, 2019, I interviewed A.S. by phone. She told me that she made appointments two or three times at a clinic in Augusta, Georgia, that she believed ALLEN cancelled. She also told me that ALLEN must have obtained her patient code because he was able to cancel her appointments using the code and attempt to stop her from having an abortion. A.S. stated she had a reservation at the Town Place Suites by Marriott, but ALLEN cancelled her reservation, and A.S. had to seek alternative lodging.

23.     On September 20, 2019, I interviewed T.R., who is an employee of the RHC. T.R. told me a man called the clinic on August 29, 2019, whom she believed to be ALLEN, and attempted to cancel A.S.'s appointment that day using an old patient code. However, A.S. changed her patient code, so the RHC did not cancel her appointment.

24.     On September 20, 2019, V.B. sent RHC's patient audit history report for A.S. to me via email. A.S.'s patient audit history indicated A.S. called the clinic and asked for the patient code to be changed. The note in the audit history report reads, "**DO NOT GIVE INFORMATION TO MALE CALLER THAT CALLS PER PATIENT ** CHANGED PT CODE."

25.     On September 22, 2019, I further reviewed ALLEN's toll records. Based on my review, I also learned that, between August 18, 2019 and August 30, 2019,

13



ALLEN made 18 calls to abortion clinics, including 16 calls to clinics with a 904 area code. In this same time period, ALLEN's phone made 24 calls using the "*67" feature when he made calls. Of those 24 calls, there were 5 calls made to abortion clinics using the "*67" feature. During the same time period, ALLEN sent A.S. 69 text messages and called A.S. 123 times. More specifically, on August 29, 2019, ALLEN placed 16 calls to abortion clinics in Jacksonville, Florida, 9 of which were to the RHC, and 4 of which were masked by dialing "*67." ALLEN also called Jacksonville-area hotels 8 times. On August 29, 2019, ALLEN called A.S. 18 times. In addition, the call records indicate ALLEN called the Town Place Suites by Marriott at 904-296-1661 on August 29, 2019 at 3:47p.m., which was shortly before A.S. called K.F. to tell her she had to change hotels. ALLEN also called the Courtyard Marriott, Extended Stay America, and the Studio 6 motel, which are all located near the Town Place Suites where A.S. advised she originally had a reservation.

26. Based on my training and experience, I know the 904 area code is used for most of Northeast Florida. I also know, based on my training and experience, that the "*67" feature can be used to hide the originating phone number on call recipients' caller ID when the originating phone dials *67 before the recipient callers' phone number.

27. At this time, I am unaware of any ATF investigation of ALLEN, as indicated by ALLEN during his call to SA Weismantel on September 11, 2019.



28. Based upon the foregoing facts, I have probable cause to believe that RODNEY ALLEN violated Title 18 United States Code, Sections 844(e) and 248(a)(1).

*[signature]*
Robert W. Blythe, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this
24th day of September 2019, at Jacksonville, Florida.

*[signature]*
JAMES R. KLINDT
United States Magistrate Judge

15