IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA,          Jacksonville, Florida

             Plaintiff,            Case No. 3:19-mj-1347-JRK

  vs.                              October 16, 2019

RODNEY ALLEN,                      1:05 p.m.

             Defendant.            Courtroom No. 5D
_____


          DIGITALLY RECORDED INITIAL APPEARANCE
         BEFORE THE HONORABLE JAMES R. KLINDT
            UNITED STATES MAGISTRATE JUDGE


 GOVERNMENT COUNSEL:

         **ASHLEY WASHINGTON, ESQ.**
         U.S. Attorney's Office
         300 North Hogan Street, Suite 700
         Jacksonville, Florida  32202


 DEFENSE COUNSEL:

         **WAFFA HANANIA, ESQ.**
         Federal Public Defender's Office
         200 West Forsyth Street, Room 1240
         Jacksonville, Florida  32202


 COURT REPORTER:

         Shannon M. Bishop, RDR, CRR, CRC
         221 North Hogan Street, #150
         Jacksonville, Florida  32202
         Telephone:  (904)549-1307
         dsmabishop@yahoo.com


     (Proceedings recorded by mechanical stenography;
 transcript produced by computer.)

<pre>
 1                    P R O C E E D I N G S

 2   October 16, 2019                              1:05 p.m.

 3                         - - -

 4         COURT SECURITY OFFICER:  All rise.  The United States

 5   District Court in and for the Middle District of Florida is now

 6   in session.  The Honorable James R. Klindt is now presiding.

 7         Please be seated.

 8         THE COURT:  This is the case of the *United States of*

 9   *America against Rodney Allen*, Case No. 3:19-mj-1347JRK.

10         Ashley Washington represents the United States.

11         Waffa Hanania is here as standby counsel, in the

12   event Mr. Allen asks for and qualifies for court-appointed

13   counsel.

14         Mr. Allen is present in the courtroom.  He is making

15   his appearance on a criminal complaint that was filed in this

16   court on September 23rd, 2019, and sworn to by FBI Special

17   Agent Robert W. Blythe on September 24th, 2019.

18         A review of the docket shows that Mr. Allen was

19   arrested in the District of South Carolina and -- and now has

20   been transported here by the United States Marshal to face this

21   charge in the criminal complaint.

22         So, Mr. Allen, if you'd come to the podium, please,

23   sir.

24         THE DEFENDANT:  Yes, sir.

25         THE COURT:  Would you state your full name, please,
</pre>

sir.

THE DEFENDANT: Rodney Allen.

THE COURT: And is that right, you were arrested in the District of South Carolina?

THE DEFENDANT: That is correct, sir.

THE COURT: All right. And did you make your initial appearance -- where, in Charleston?

THE DEFENDANT: Charleston, South Carolina.

THE COURT: All right. And how old are you, sir?

THE DEFENDANT: 42 years old.

THE COURT: What is your date of birth?

THE DEFENDANT: 1/10/1977.

THE COURT: What is your home address?

THE DEFENDANT: 15 Ben Allen Road, Beaufort, South Carolina, 29906.

THE COURT: And how long have you lived there?

THE DEFENDANT: That's actually the residence where I actually grew up at. However, I've been back at that residence living there for approximately two years.

THE COURT: And how much schooling or other education have you had?

THE DEFENDANT: Some college.

THE COURT: Did you graduate from high school?

THE DEFENDANT: No, sir, but I later obtained a GED, the following year.

1    THE COURT:  All right.  And how many years of actual

2 schooling did you complete before your GED?

3    THE DEFENDANT:  Nine years.

4    THE COURT:  You do read, write, and understand

5 English?

6    THE DEFENDANT:  I do.

7    THE COURT:  Mr. Allen, are you under the care of a

8 physician or psychiatrist at this time?

9    THE DEFENDANT:  Not actually under the care of a

10 physician.  But I wanted to add that August 23rd I got involved

11 with a motor vehicle accident which required physical therapy,

12 which was obviously interrupted due to my incarceration.

13    THE COURT:  All right.  And what injuries did you

14 suffer?

15    THE DEFENDANT:  To my back and neck.

16    THE COURT:  Have you seen a doctor or a nurse or

17 anyone while you've been in custody, related to those injuries?

18    THE DEFENDANT:  Yes, I have.

19    THE COURT:  All right.  As you stand here today, are

20 you under the influence of drugs, alcohol, or any intoxicant?

21    THE DEFENDANT:  No, sir.

22    THE COURT:  Are you taking any medication prescribed

23 by a doctor?

24    THE DEFENDANT:  No, sir.

25    THE COURT:  Have you received any treatment, though,

1    at all for your back or neck?

2              THE DEFENDANT:  Yes, I did.  And it was basically

3    physical therapy.  As I said, I began physical therapy.  In

4    fact, I had a scheduled appointment the day of my arrest, when

5    I turned myself in.  But, like I said, it was interrupted due

6    to my incarceration.

7              THE COURT:  And then the -- either the doctor or

8    nurses, whoever you've seen since you've been in custody, have

9    they done anything for you?

10             THE DEFENDANT:  Yes.  There was a -- some ibuprofen

11   that was given to me.  But aside from that, nothing else.

12             THE COURT:  All right.  Mr. Allen, in the past, have

13   you ever been treated for any mental or emotional disorder or

14   illness?

15             THE DEFENDANT:  No, sir.

16             THE COURT:  Do you believe you now suffer from any

17   mental or emotional disorder or illness?

18             THE DEFENDANT:  No, sir.

19             THE COURT:  Do you clearly understand where you are,

20   what you are doing, and the importance of this proceeding?

21             THE DEFENDANT:  Yes, I do.

22             THE COURT:  Mr. Allen, did you get a copy of the

23   criminal complaint?

24             THE DEFENDANT:  Yes, sir.

25             THE COURT:  All right.  I'm going to ask

1    Ms. Washington, who was the prosecutor in your case, to advise

2    you of the charges and the penalties that you face.

3         I'm sure you were advised of these matters in the

4    District of South Carolina.  But just to make sure there's no

5    confusion about any of it, I'll have Ms. Washington advise you

6    of the charges and penalties.

7         Ms. Washington?

8         MS. WASHINGTON:  Mr. Allen, you've been charged by

9    criminal complaint with two counts.  Count One is threat by

10   phone; that is, threatening and conveying false information

11   concerning the use of an explosive, in violation of 18, U.S.C.,

12   Section 844(e).

13        Count Two is interference with access to reproductive

14   health services, which is in violation of 18, U.S.C., Section

15   248(a)(1).  And the complaint face sheet does indicate that

16   this occurred on or about August 29, 2019, here in the County

17   of Duval, in the Middle District of Florida.

18        The maximum penalty you face on Count One, the threat

19   by phone, is up to ten years' imprisonment, a $250,000 fine, or

20   both imprisonment and the fine, up to three years of supervised

21   release.

22        If you were to violate supervised release, you could

23   face up to an additional two years of imprisonment, plus a

24   potential additional term of supervised release.  And there's a

25   mandatory $100 special assessment.

1        For the second charge, the 18, U.S.C., Section

2   248(a)(1), you face up to one year of imprisonment, a $100,000

3   fine, or both imprisonment and the fine, up to one year of

4   supervised release, and up to one year of additional

5   imprisonment if you were to violate supervised release,

6   causing, again, potentially another term of supervised release,

7   and a mandatory $25 special assessment.

8        If convicted on both counts, you face a cumulative --

9   or a total exposure of up to 11 years of imprisonment, a

10  $350,000 fine, or both imprisonment and a fine, up to three

11  years of supervised release.

12       If you were to violate supervised release, up to

13  three years of additional imprisonment, as well as potentially

14  another term of supervised release, and a mandatory $125

15  special assessment.

16       THE COURT:  All right.  And, Ms. Washington, to the

17  extent it's applicable, has the government complied with the

18  Crime Victims' Rights statute?

19       MS. WASHINGTON:  Yes, Your Honor.

20       THE COURT:  All right.  Thank you.

21       All right.  Mr. Allen, do you understand the charges?

22       THE DEFENDANT:  Yes, sir, I do.

23       THE COURT:  Do you understand the maximum penalty you

24  face as to each charge?

25       THE DEFENDANT:  Yes, sir.

1    THE COURT:  And do you understand the total

2  cumulative penalty you face if you were convicted of both

3  charges and sentenced consecutively?

4    THE DEFENDANT:  I do, sir.

5    THE COURT:  All right.  The purpose of this hearing

6  is to advise you of the charges, the rights that you have, the

7  proceedings that we'll follow, and to discuss the issue of

8  bond.  You will not be called upon to plead to the charges at

9  this time.

10    You have a constitutional right to remain silent.

11  You do not have to make any statement.  You do not have to give

12  a statement at any time to any law enforcement officer or

13  government agent.

14    If you do make a statement, anything you say can and

15  will be used against you in court, including at a subsequent

16  hearing or proceeding in this case.  If you have made a

17  statement in the past, you need not make any further statement

18  in the future.

19    Mr. Allen, do you understand your right to remain

20  silent?

21    THE DEFENDANT:  Yes, sir, I do.

22    THE COURT:  Mr. Allen, you have the right to be

23  represented by an attorney in all proceedings in this case.  If

24  you cannot afford to retain your own attorney, I will appoint

25  an attorney to represent you at no cost or obligation to

1   yourself.

2        To do that, I have to place you under oath and ask

3   you questions about your financial condition to see if you

4   qualify for court-appointed counsel. You also have a

5   constitutional right to represent yourself without an attorney,

6   if that is what you wish to do.

7        Mr. Allen, do you understand your right to be

8   represented by an attorney?

9        THE DEFENDANT: Yes, sir, I do.

10        THE COURT: Would you like to be represented?

11        THE DEFENDANT: Yes, sir.

12        THE COURT: Do you want me to consider appointing an

13   attorney to represent you?

14        THE DEFENDANT: Yes, sir.

15        THE COURT: If you'd raise your right hand, please,

16   sir. Do you solemnly swear the statements you make during this

17   hearing will be the truth, the whole truth, and nothing but the

18   truth, so help you God?

19        THE DEFENDANT: I do.

20        THE COURT: All right. Thank you.

21        Mr. Allen, you have been sworn to tell the truth.

22   Should you knowingly lie about any fact material to these

23   proceedings, you could be charged with perjury. Perjury is a

24   felony.

25        Also, if you knowingly omit or leave out material

1    information, you could be charged with making a false

2    statement.  That, too, is a felony.

3            You understand all that, sir?

4            THE DEFENDANT:  Yes, sir.

5            THE COURT:  All right.  Are you employed at this

6    time?

7            THE DEFENDANT:  No, sir.

8            THE COURT:  Do you have any source of income?

9            THE DEFENDANT:  No, sir.

10           THE COURT:  Do you own any stocks or bonds?

11           THE DEFENDANT:  No, sir.

12           THE COURT:  Do you own any real estate?

13           THE DEFENDANT:  No, sir.

14           THE COURT:  Do you have a checking account?

15           THE DEFENDANT:  No, sir.

16           THE COURT:  Do you have a savings account?

17           THE DEFENDANT:  No, sir.

18           THE COURT:  Do you own a car or truck?

19           THE DEFENDANT:  No, sir.

20           THE COURT:  Do you have more than $500 in cash

21   anywhere?

22           THE DEFENDANT:  No, sir.

23           THE COURT:  Do you own any asset valued at more than

24   $500?

25           THE DEFENDANT:  No, sir.

1          THE COURT:  Ms. Washington, do you want me to ask

2     Mr. Allen any further questions in this area?

3          THE DEFENDANT:  No, Your Honor.

4          THE COURT:  All right.  I do find Mr. Allen is

5     financially unable to afford counsel.  I will appoint counsel

6     to represent him.  I'll appoint the Federal Public Defender.

7          And, Ms. Hanania, thank you for being here this

8     afternoon.

9          All right.  Well, we have two -- two matters to

10    discuss at this point.  One is, we need to go ahead and set the

11    preliminary hearing in this case, because, as I understand it,

12    Mr. Allen did not have a preliminary hearing in the District of

13    South Carolina.  So that has to be held within 14 days.

14         So, Mr. Allen, you were probably informed of this,

15    but you have the right to a preliminary hearing, because the

16    charges against you have been brought in a criminal complaint.

17    And at that hearing your attorney can cross-examine government

18    witnesses, offer evidence on your behalf.  You can testify if

19    you want to, but you don't have to.

20         That hearing has to be held within 14 days if you're

21    in custody.  It has to be held within 21 days if you're

22    released on bond.

23         And if the government fails to establish probable

24    cause as to both of the allegations, then you're discharged

25    from the criminal complaint.  If the government establishes

1  probable cause as to one or both of the -- of the charges, then

2  you're held over for further proceedings.  You can waive that

3  hearing at any time.

4          Do you understand your right to a preliminary

5  hearing?

6          THE DEFENDANT:  Yes, sir.

7          THE COURT:  All right.  That brings us to the issue

8  of bond.  I've reviewed the paperwork.  And it -- I'm -- it's

9  not clear to me exactly what happened in the District of South

10  Carolina.  Because it looks, on the one hand, like there was a

11  detention hearing.  But it looks like, on the other hand, the

12  Court indicated that Mr. Allen could have a detention hearing

13  here.

14          Of course, that -- that situation would be somewhat

15  contrary to what the statute contemplates, but I haven't really

16  had enough time to fully study the matter.

17          Ms. Washington, what is your position with respect to

18  at least what you know at this point?

19          MS. WASHINGTON:  Your Honor, it's my understanding

20  that he had -- since he had a detention hearing, and consistent

21  with the rule, that was his opportunity to have one, and that

22  it doesn't appear that (unintelligible), as you indicated, the

23  way the rule works.  So I would think that by having had that

24  previous detention hearing, he would be foreclosed from one

25  here.

1    THE COURT:  All right.  Then, Ms. Hanania, what's

2  your position?

3    MS. HANANIA:  Well, Your Honor, I don't necessarily

4  disagree, in terms of Ms. Washington's statement pursuant to

5  the rules.  However, it certainly appears clear from the

6  paperwork that I've been provided that the judge handling the

7  detention hearing in South Carolina specifically wrote in that

8  he had advised Mr. -- Mr. Allen that he could seek any

9  detention hearing in the prosecuting district.  And Mr. Allen

10  is indicating that he'd like to avail himself of that.

11    So we are going to ask Your Honor to schedule both a

12  detention hearing as well as a preliminary hearing, and allow

13  this Court to -- to determine the matter.

14    (Counsel confers with defendant.)

15    THE COURT:  This --

16    MS. HANANIA:  And, Your Honor --

17    THE COURT:  Yeah.  Go ahead.

18    MS. HANANIA:  I apologize, Your Honor.

19    THE COURT:  No, go ahead.

20    MS. HANANIA:  Mr. Allen has just informed me that --

21  that he was specifically told by the judge there that his

22  decision was not bound -- was not binding on Your Honor, or on

23  this Court.  So he would like to seek another hearing.

24    THE COURT:  Ordinarily how this would work,

25  Mr. Allen, is that if -- if you wanted to appeal the decision

1  by the -- by the judge in South Carolina, you would appeal it

2  to the district -- a district judge here --

3          THE DEFENDANT:  Yes, sir.

4          THE COURT:  -- is generally how it would work.  But

5  it looks to me like the -- that the judge in South Carolina was

6  suggesting that you could revisit that in front of me.  And so

7  I'm -- I'm not -- whether you have the right to it or not, once

8  somebody tells you that you have it, I'm not inclined to now

9  tell you that you don't have that right.

10         I would, though, be interested in -- and I think it

11 would be relevant to know -- what was presented in the District

12 of South Carolina.  So this would be my thought.  And it's a

13 little bit out of the ordinary.

14         But since Mr. Allen already at least had -- had a

15 detention hearing in the charging district, would be to set

16 this over probably for -- I'm thinking a week from next

17 Tuesday.

18         So that would give the government time to obtain the

19 transcripts and whatever information from South Carolina, so

20 that I -- I'd have that, and then whatever else you wanted to

21 present.

22         And then -- and then we'd set it for either Tuesday

23 or Wednesday of not next week, but the following week.  The --

24 Wednesday would be the 14th day from today, so I'd be inclined

25 to set it probably on Tuesday.  And I hate setting it for the

1  14th day.  And then we could have the detention hearing and

2  preliminary hearing.

3          Now, if the government presents your case to the

4  grand jury between now and then and the grand jury indicts

5  you -- and if I don't get the case and one of my three

6  colleagues on this floor gets it, they may have a different

7  view on the detention issue.  I don't know.

8          But I -- as I said, if -- if -- you know, sometimes

9  you don't have the right to something, but then somebody tells

10 you you're going to get it, then it seems to me that it would

11 be appropriate for you to get that hearing.  But I would want

12 to at least know what happened in South Carolina and -- and not

13 treat that as if it didn't occur, because it did.  So that

14 would be my thought.

15          Is this going to be your case?

16          MS. HANANIA:  Your Honor, Mr. Grant, from my office,

17 will be handling the case.

18          THE COURT:  Okay.  All right.  Well, let's -- let's

19 do that, then.  Let's set it -- should we set it for the

20 Tuesday?  Or should we set it for Wednesday?

21          MS. WASHINGTON:  Your Honor, I think that Tuesday

22 would be fine.

23          MS. HANANIA:  I think so, Your Honor.

24          THE COURT:  Okay.  Let's take a look.

25      (Judge confers with courtroom deputy.)

1        THE COURT:  All right.  So we'll set this for the

2    preliminary hearing and the detention hearing for 3 o'clock on

3    October 29th.

4        Does that work?

5        MS. HANANIA:  I think so, Your Honor.

6        MS. WASHINGTON:  Yes, Your Honor.  Thank you.

7        MS. HANANIA:  Yes, sir.

8        THE COURT:  All right.  As I said, if the case is

9    presented to the grand jury, and if the grand jury acts between

10   now and then, and it goes to a different judge, then you'd end

11   up in front of a different judge on this floor, and you could

12   take up the issue -- of course, you could -- you could tell

13   that judge that I was inclined to have the detention hearing.

14       And if I get it, the case, we'll probably just leave

15   it for the arraignment and the -- the detention hearing on that

16   date.

17       THE DEFENDANT:  Yes, sir.

18       THE COURT:  And that will also give Mr. Grant time to

19   muster whatever evidence he wants, or get whatever witnesses he

20   wants in place for the hearing.

21       As I said, that's just a little bit different, in

22   terms of the detention situation.  I do have to say, though,

23   that sometimes reading those rules -- you know, if you don't

24   deal with them a lot, and sometimes you don't, you can go --

25   you can go months, and maybe a year or so, without having to

1    deal with those rules.

2         And, you know, if something happens here, you get

3    this hearing.  If it happens there, you don't get that hearing,

4    but you get another hearing.

5         And so for whatever reason, the judge there believed

6    that -- that you could revisit this issue here.  And so if the

7    case is assigned to me, that's -- that's how I'm reading it,

8    and that's what I'd be inclined to do.

9         And, like I said, if somebody else on this floor gets

10   it, if it's indicted, then, Ms. Hanania, you or Mr. Grant can

11   make your pitch to them.

12        MS. HANANIA:  Yes, sir.

13        THE COURT:  Okay?

14        Ms. Washington, is there anything else?

15        MS. WASHINGTON:  No, Your Honor.

16        THE COURT:  Ms. Hanania?

17        MS. HANANIA:  Your Honor, I would orally move for the

18   disclosure of the criminal history portion of the pretrial

19   services report.

20        THE COURT:  Would you like that, too, Ms. Washington?

21        MS. WASHINGTON:  Your Honor, I believe I already have

22   it, but I -- just to be safe, I'll join in as well.

23        THE COURT:  Okay.  Well, I'll just treat that as a

24   joint motion to have the criminal history portion of the

25   pretrial services report provided to the parties and grant the

1    motion and direct that the pretrial services officer provide

2    that to you-all.

3              All right.  We're in recess.

4              MS. HANANIA:  Thank you, Your Honor.

5              THE DEFENDANT:  Thank you.

6              COURT SECURITY OFFICER:  All rise.

7        (The digitally recorded proceedings concluded at

8    1:23 p.m.)

9                             - - -

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE

UNITED STATES DISTRICT COURT    )
                                )
MIDDLE DISTRICT OF FLORIDA      )


      I hereby certify that the foregoing transcript is a true and correct computer-aided transcription from the official electronic sound recording of the proceedings in the above-entitled matter.


      DATED this 2nd day of November, 2020.



      s/Shannon M. Bishop

      Shannon M. Bishop, RDR, CRR, CRC